UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA       :
                               :    Criminal No. 17-10-LPS
        v.                     :
                               :
TORON CROCKER                  :


**DEFENDANT TORON CROCKER'S REPLY TO GOVERNMENT'S TRIAL MEMORANDUM
AND OMNIBUS MOTION IN LIMINE**

# TABLE OF CONTENTS

1. Agent Lipsner's Testimony Should be Limited .............. 2

2. The Graphic/Explicit Portions of the Videos Should Not be Viewed by the Jury........................................... 4

3. The Government Should be Precluded from Arguing that Items and Records Found on Mr. Crocker's Home Computer are Relevant to Counts 1 and 2............................................. 10

4. The Court Should Instruct the Jury that if Convicted regarding Count 1 or Count 2 Mr. Crocker faces a Mandatory Minimum 15 Years Imprisonment................................ 13

5. The Government Should Not Be Permitted to Rely on Trade Inscriptions to Prove the Country of Origin for Electronic Devices....................................................... 15

Defendant Toron Crocker, by and through his attorney, Rocco C. Cipparone, Jr., Esquire, hereby responds to the government's August 16, 2021 filed Omnibus Motions in Limine (combined with the government's trial memorandum) (Docket Document 86, hereinafter referred to as "GT Mem.").

1. **Agent Lipsner's Testimony Should be Limited**[1]

The government intends to present testimony by FBI Special Agent Lipsner. The government represents that "Special Agent Lipsner will provide **an overview** and summary of the case – to include how the investigation began, who was involved, and what techniques were used. He will also **connect the dots between different pieces of evidence**." GT Mem. at 12 (bold added). That is not the task of a witness, but of a jury (and the prosecutor on closing argument from a suggested evidence interpretation standpoint). Permitting Agent Lipsner to do so would usurp the jury's function and over-step his role as a fact witness.

It is unclear specifically how the government intends Agent Lipsner to "connect the dots" when providing this purported case overview. A witness' testimony must be limited "only to

---

[1] This section alternatively should be considered **a defense motion in limine** to exclude and limit the proposed testimony by Agent Lipsner as an overview witness.

information about which he or she has firsthand knowledge… ." *United States v. Meléndez-González*, 892 F.3d 9, 18 (1st Cir. 2018). The government should be required specifically, in advance of the trial testimony, to outline what will be the nature of the "overview" testimony by Agent Lipsner.

Courts must tread cautiously when considering allowing overview (as opposed even to summary) testimony:

> The main difference between summary and overview testimony is that summary testimony comes at the end of trial and overview at the beginning, but both try to connect the dots and convey the big picture to the jury in complex prosecutions. United States v. Banks , 884 F.3d 998, 1023 (10th Cir. 2018).
>
> Summary evidence may be safer because the evidence that the officer is connecting has already been heard by the jury. *See Moore* , 651 F.3d at 56 (citing *United States v. Lemire* , 720 F.2d 1327, 1349, n.33 (D.C. Cir. 1983) ). Because witnesses can change their stories and objections may be sustained, some of the testimony relied on during the initial overview may never materialize at trial. *United States v. Casas*, 356 F.3d 104, 119-20 (1st Cir. 2004). …
>
> Another serious problem with overview testimony is that it sometimes relies on anticipated witnesses. Thus, it may violate confrontation rights. Testimonial statements cannot be offered against a defendant without the opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). If overview testimony previews the answers of an anticipated witness, such a violation is not easily cured if the expected witness later fails to testify.

3

*United States v. Lacerda*, 958 F.3d 196, 207-08 (3d Cir. 2020).

Therefore, to avoid those serious risks attendant to overview testimony, the Court should require a more specific proffer of the anticipated overview testimony because such, as the Third Circuit has held, must be limited to "tell[ing] the story of that investigation—how the investigation began, who was involved, and what techniques were used. In addition, with proper foundation, … [the witness] may offer lay opinion testimony and testify about matters within his personal knowledge." *Lacerda*, 958 F.3d at 208. As the Court held in *Lacerda*, "overview testimony that opines on ultimate issues of guilt, makes assertions of fact outside of the officer's personal knowledge, or delves into aspects of the investigation in which he did not participate is inadmissible." *Lacerda*, 958 F.3d at 308.

### 2. The Graphic/Explicit Portions of the Videos Should Not be Viewed by the Jury

The government seeks (GT Mem. at 15) to have the jury view graphic video recordings of Mr. Crocker and each his daughters respectively engaging in what certainly will be jarring conduct to the jury. The Court should either require the government to only play portions of the video that do not depict graphic

4

sexual activity, or instead even to show properly selected non-graphic screen shots from such (for example as it has even within its motion). That process of properly selected clips and/or screen shots will nonetheless allow the government to present evidence from the videos to prove that Mr. Crocker was in the video, that he held the recording device, and that each of his daughters was in the video in which she appears regarding Counts 1 and 2 of the superseding indictment each charging the production of Production of Child Pornography. That presentation would avoid the undue prejudice from such graphic videos being presented to the jury, yet preserve the government's ability to prove that the victim of each count was under 18 years of age, that it was the defendant who used the victim un each count to take part in the charged activity, and that it was the defendant's purpose to produce the recording(s). GT Mem. at 2 (elements of Counts 1 & 2).

Furthermore, as to the element (for Counts 1 and 2) that the material produced must be "sexually explicit conduct", the government can have Agent Lipsner (or any other witness of its choosing who has viewed the videos) summarize the more graphic content of the videos rather than to display such to the jury.

5

Assuming that such description is accurate[2], the defense would not challenge the description (and if it did, the door would be open to the government then playing the otherwise verbally summarized portions of the videos). Thereby, the government still would have evidence from the video in terms of the uncontested stipulated accurate description, to prove the requisite element of each of Counts 1 and 2 that the video defendant knowingly used the victim to take part in "'sexually explicit conduct' – which includes actual or simulated sexual intercourse, oral sex, masturbation, or a 'lascivious exhibition of the genitals or public area'".[3] GT Mem. at 2.

Evidence is inadmissible if its prejudicial character substantially outweighs its probative value. Fed. R. Evid. 403; *United States v. Wong*, 703 F.2d 65 (3d Cir. 1983); *United States v. Brady*, 595 F.2d 359, 361 (6th Cir. 1979); *United States v. Goichman*, 547 F.2d 778, 782 (3d Cir. 1976). Unfair prejudice is "an undue tendency to suggest decision on an improper basis,

---

[2] The defense is willing to work with the government in advance of trial to reach a stipulation as to the substance of what Agent Lipsner (or any other witness of the government's choosing of course who viewed the videos) would testify regarding such description so that such testimony would not draw any defense objection.

[3] The other elements of the crimes charged in Counts 1 and 2 which the government must prove do not rely upon the video content.

commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee Notes.

Even though as lawyers and as a Judge, defense counsel, the prosecutors and this Court must watch these videos in order to assess these issues related to the government's motion and the proposed evidence, the visceral impact of these videos is strong and lasting and will be particularly so on a jury who have not had to deal with reviewing such evidence in the past. Jurors -- less steeled than the lawyers and the Court in a case must be solely in the context of performing our respective roles -- will have an strong visceral gut-wrenching reaction that will be impossible to compartmentalize or to shake.

The Court will experience such first-hand when it views the videos the government will submit for review by the Court. After viewing such, the Court cannot reach any other conclusion but that any probative value of the videos is overwhelmingly outweighed by the danger of unfair prejudice: no rational jurors will be able to competently and fairly assess the validity of defenses after viewing such evidence. The solution proposed above by the defense gives the government what it needs from the videos in terms of their probative nature, but sanitizes the evidence of its otherwise unfair prejudicial impact if presented in their native form – which incontrovertibly would trigger the

7

sensitivities and emotions of the jury in an unduly prejudicial manner against Mr. Crocker.

Furthermore, the descriptions as opposed to the graphic video presentation will not be unfair to the government either, for the reasons stated above. It will still permit any probative impact and proper prejudice (in the sense that all evidence is prejudicial of course to one party or the other generally), but also would avoid the undue prejudice. Although the government (GT Mem. at 18-19) states that "Rule 403 is not a 'shield' to keep juries from learning the details of crimes likes [sic] these" (citing *United States v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021)), the proposed balance outcome here, with the above-referenced alternatives, would not shield the jury from knowing the details. The jury would hear uncontested accurate factual summaries of what is depicted on the videos, so it would indeed learn the details, just not in an unavoidably unduly prejudicial manner.

The prosecution may argue that it is "entitled to prove its case by evidence of its own choice." *Old Chief v. United States*, 519 U.S. 172, 186 (1997). However, in explaining this rule, the Supreme Court emphasized the importance of allowing the prosecution to maintain "the natural sequence of narrative evidence" in presenting its case. *Old Chief*, 519 U.S. at 189.

The Court's concern in *Old Chief*, was that if defendants have the option to stipulate away evidence, jurors would hear a "story interrupted by gaps of abstraction" and may be "puzzled at the missing chapters." *Old Chief*, 519 U.S. at 189. That concern is absent in the present case: omitting the presentation of the sexually explicit/graphic portions of the videos will not disrupt the flow of the government's trial evidence or leave the jury feeling that a chapter of the story is missing, when the above alternative options exist. For example, in the movie *Jaws*, the audience never actually sees the shark consume its victims (with only one exception at the end regarding the boat captain). Regardless, the audience knows that what happened to those victims and the less-graphic scenes still are notorious for making many people afraid to enter the ocean well before the boat captain is killed on screen by the shark.

When considering whether to exclude on grounds of unfair prejudice, the "availability of other means of proof may . . . be an appropriate factor." Fed. R. Evid. 403, Advisory Committee Notes. In addition to the verbal summary of (as opposed to showing) the sexually explicit video content, the prosecution can play the non-graphic portions of the videos; can use non-graphic screen shots as referenced above; and will present the lengthy post-arrest statement by Mr. Crocker already

9

ruled admissible by the Court, in which the government contends he admitted at least some (and maybe all) of the elements of the crimes charged in Counts 1 and 2.

As such, when viewed in the context of the other evidence that the government will present, the probative value of the graphic portions of the videos at issue is significantly diminished, and is well outweighed by the danger of unfair prejudice.

**3. The Government Should be Precluded from Arguing that Items and Records Found on Mr. Crocker's Home Computer are Relevant to Counts 1 and 2**

As to images which the government contends constitute child pornography and child erotica, which images do not involve Mr. Crocker's daughters, and internet search history, all of which items allegedly were found on Mr. Crocker's computer, the government contends that such is admissible pursuant to Fed. R. Evid. 414(a) and Fed. R. Evid. 404(b) as to Counts 1 and 2 (the production of child pornography). The jury should be instructed that it cannot consider such images regarding Counts 1 and 2, and that it can only consider such evidence regarding Count 3 of the indictment. The government should be precluded from arguing otherwise.

The government contends that such evidence is relevant and probative to prove Mr. Crocker's sexual interest in children and his intent in producing the videos of his daughters. As to the former – sexual interest in children – such is not an element of the offenses alleged in Counts 1 and 2 of the superseding indictment. See GT Mem. at 2-3 (setting forth elements of crime charged in Counts 1 and 2). The government contends that because Mr. Crocker denied a sexual interest in children in his pos-arrest statement, the evidence fairly is admitted to challenge that assertion. However, at present there is no defense intention to argue to the jury any lack of sexual interest in children as a defense to the manufacture charge, of which it is not an element. That is unlike what was presented in defense by defendant Staples in *Heatherly*, 985 F.3d at 269, on which case the government heavily relies. Because defendant Staples "opened the door to this evidence and cannot complain that the Government walked through it", the Third Circuit upheld the admission of child pornography evidence. *Heatherly*, 985 F.3d at 269.

The government here is attempting to manufacture the admissibility of such evidence as relevant to Counts 1 and 2 by injecting that issue into the trial by introducing that portion of Mr. Crocker's post-arrest statement denying sexual interest

11

in children.  It is attempting to bootstrapping the admissibility of this other crimes evidence (as it relates to Counts 1 and 2, as opposed to Count 3) by raising the issue it then seeks to rebut with the otherwise inadmissible evidence. Allowing such would be a denial of fundamental fairness, due process, and the intent and spirit of Fed. R. Evid. 414 and 404.

Even if the Court determines that the government generally is entitled to present and argue such evidence regarding Counts 1 and 2, the government needs to provide more specific reference to the exact evidence it seeks to introduce before a proper analysis can be made.[4]  To be relevant to intent and motive, if at all, such evidence would have to predate the date(s) on which the video evidence was produced.  Without such, it is a "chicken or egg" dilemma for the government: the only way the items not involving Mr. Crocker's daughters which are proffered by the government as relevant and probative of Mr. Crocker's intent on the date(s) he allegedly made the videos of his daughters cane be considered relevant and probative of such, the government must establish that those items were possessed, searched, obtained etc. by Mr. Crocker <u>before</u> the date(s) on which the videos were made. The government has not identified enough

---

[4] This is of course an alternative argument, not a concession that the Court should allow such evidence.

12

information presently for the Court and defense counsel to make that analysis, and it should be required to do so before trial so that this issue can be determined pre-trial (to avoid the need to strike evidence after the proverbial bell is rung in the presence of the jury which cannot be un-rung especially regarding evidence of the nature involved here).

### 4. The Court Should Instruct the Jury that if Convicted regarding Count 1 or Count 2 Mr. Crocker faces a Mandatory Minimum 15 Years Imprisonment

The Court Should Instruct the Jury that if convicted regarding Count 1 or Count 2 Mr. Crocker faces a mandatory minimum 15 years imprisonment, and if convicted regarding Count 3 he faces up to 20 years imprisonment. The defense also should be permitted to mention such in opening and closing arguments. A jury of course will not know or be expected to know that such mandatory minimum applies. The failure to so inform the jury would be a violation of Mr. Crocker's Sixth Amendment jury rights. Those Sixth Amendment jury rights include a "a jury which understands the effects and implications of its decision." *U.S. v. Polizzi*, 549 F. Supp. 2d 308, 444 (E.D.N.Y. 2008)(vacated by *U.S. v. Polouizzi*, 564 F.3d 142 (2d Cir. 2009)). As Judge Weinstein thoroughly set forth in the (admittedly overruled by the Second Circuit, which Second

13

Circuit decision of course is not binding on this Court), the principles outlined in *Alleyne v. United States*, 570 U.S. 99 (2013), *U.S. v. Booker*, 543 U.S. 220 (2005), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Crawford v. Washington*, 541 U.S. 36 (2004) and their progeny support the conclusion that the Sixth Amendment jury trial right includes the right to a jury informed of the potential consequences to the defendant of its verdict(s). Furthermore, notwithstanding that the determination of a new trial by the District Court because the jury was not instructed of the penalties was vacated in *Polouizzi*, the Second Circuit therein also noted that there is discretion on the part of a District Court to advise the jury of the penalties faced by a defendant. Indeed,

> a defendant's right to inform the jury of that information essential 'to prevent oppression by the Government' is clearly of constitutional magnitude. That is, if community oversight of a criminal prosecution is the primary purpose of a jury trial, then to deny a jury information necessary to such oversight is to deny a defendant the full protection to be afforded by jury trial. Indeed, to deny a defendant the possibility of jury nullification would be to defeat the central purpose of the jury system.

*U.S. v. Datcher*, 830 F. Supp. 411, 415 (M.D. Tenn. 1993).

The government's reliance (GT Mem. at 22) on *U.S. v. Fisher*, 10 F.3d 115 (3d Cir. 1993) to support its position that any such reference should be precluded is inapposite, as Fisher well pre-dates the evolving laws regarding the Sixth Amendment

14

jury trial right since Fisher was decided: that is, *Alleyne*, *Booker, Apprendi, Crawford,* and their progeny.

> **5. The Government Should Not Be Permitted to Rely on Trade Inscriptions to Prove the Country of Origin for Electronic Devices**

The purpose for which the government seeks to introduce evidence of trade inscription is indeed to establish a requisite element of all of the counts of the superseding indictment against Mr. Crocker: the jurisdictional Commerce Clause element.

Those alleged trade inscriptions are indeed hearsay under Fed. R. Evid. 801(c): they are being offered to prove the truth of the matter asserted -- that the items to which the labels are affixed were manufactured or assembled in locations other than Delaware of the United States. That conclusion cannot be credibly controverted.

Furthermore, the residual exception under Fed. R. Evid. 807 does not support the admissibility of such items. That Rule required that the statement be "supported by sufficient guarantees of trustworthiness-after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement." Fed. R. Evid. 807. The government has provided no basis for the Court to conclude that mere paper

15

stickers[5] affixed to a cell phone and a computer hard drive provide "sufficient guarantees of trustworthiness'. They do not. The "totality of the circumstances" presented by the goveRnment is a mere bald assertion that the statements on the stickers – which could have been affixed by anyone, at any time, at any location - include no information for example as to:

- who affixed such sticker;

- under what authority or circumstances such sticker was affixed;

- when such sticker was affixed;

- where (meaning in what state or country) such sticker was affixed;

- what knowledge if any the person who affixed such sticker had as to the printed information on the sticker;

- the veracity of the information on such sticker.

Ironically the prosecution – whose very job is to prosecute violations of federal law, so it knows such occurs often – argues that "[t]he inscription has circumstantial guarantees of trustworthiness because federal law regulates inscriptions regarding foreign origin and prohibits misleading designations

---

[5] See GT. Mem. at 9-10 providing pictures of the stickers it contends are "inscriptions".

16

of origin." GT Mem. at 25. If everyone followed the law, the respectfully the prosecutor would be practicing in some other field of law. It is a faulty conclusion that:

- ➢ some easily printed sticker
- ➢ with easily fabricated information
- ➢ made and affixed by some unknown person(s)
- ➢ with some unknown level of knowledge,

is sufficient indicia of reliability to support the admission of such evidence as to a jurisdictional element and (as acknowledged by the government) a "material fact, namely that the electronic devices travelled in interstate or foreign commerce …." GT Mem. at 25, merely because federal law requires truth in such labels.

It also is an unsupportable bald assertion by the government that "the trade inscription is more probative of this issue than any other evidence; indeed, to some degree it is more probative than a live witness on the subject." GT Mem. at 25. Such vacuous evidence cannot be and would not be more probative than testimony by a live witness with knowledge of where the item/part in question was indeed manufactured, and/or from and to where it was transported.

17

The government's motion therefore must be denied.

>
> Respectfully submitted,
>
> Law Offices of Rocco C. Cipparone, Jr.
>
> BY: /s/Rocco C. Cipparone Jr.
> _____
> Rocco C. Cipparone, Jr., Esquire
> Attorney for Toron Crocker

18