UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK STEDMAN,<br><br>Defendant. | Criminal Action No. 21-383 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

Defendant Patrick Stedman, who is scheduled to stand trial beginning on June 5, 2023, on a five-count indictment stemming from his alleged criminal conduct at the U.S. Capitol on January 6, 2021, seeks dismissal of Counts One, Two, and Three, charging violations of 18 U.S.C. §§ 1512(c)(2), 1752(a)(1), and 1752(a)(2), respectively. Def.'s Not. of Pretrial Mots. (Parts I and II) ("Def.'s Mot."), ECF No. 46; *see also* Indictment, ECF No. 14. For the sound and persuasive reasons already articulated by many Judges on this Court, including the undersigned, in rejecting similar motions by other defendants charged in connection with offense conduct at the U.S. Capitol on January 6, these parts of defendant's pretrial motions are denied.[1]

**I.   DISCUSSION**

Each of defendant's challenges to the constitutionality and application to his offense conduct of the charges in Counts One, Two, and Three are discussed *seriatim*.

---

[1] Defendant filed all pretrial motions in a single motion, with Parts III and IV addressed in a forthcoming Memorandum Opinion and Order, ECF No. 58.

1

### A.     Count One Charging Violation of 18 U.S.C. § 1512(c)(2)

Defendant first takes aim at Count One, which alleges that defendant "corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment," in violation of 18 U.S.C. § 1512(c)(2), and Aiding and Abetting a violation of the same statute, in violation of 18 U.S.C. § 2.  *See* Indictment (Count 1).  As to Count One, defendant seeks dismissal because: (1) the Electoral College vote does not constitute an "official proceeding" under Section 1512(c)(2), and construing the statute this way would otherwise violate the *ex post facto* prohibition of the Fifth Amendment's Due Process Clause; (2) the Indictment fails to allege defendant took some action with respect to a "document, record, or other object[;]" (3) Count One violates his rights under the Fifth Amendment's Due Process Clause by not charging others "whose conduct was similar or even more egregious to his[;]" (4) Section 1512(c)(2)'s "corruptly" requirement is unconstitutionally vague; and (5) as applied to him, Count One violates the First Amendment.  *See* Def.'s Mem. at 6–32.  These arguments are unavailing.

####     1.     *Congress's Certification of the Electoral College Vote Was an "Official Proceeding" Under Section 1512(c)(2).*

Pointing to the structure, text, and the context of other statutes in Chapter 73 of title 18, defendant contends that certification of the Electoral College vote does not constitute an "official proceeding," within the meaning of § 1512, since coverage requires "Congress[] [to exercise its] implied power of investigation in aid of legislation, adjudication, or any quasi-judicial function." Def.'s Mem. at 7; *see also id.* at 8 (arguing that "other than [18 U.S.C.] § 1505, the provisions of Chapter 73 criminalize only actions that in some way relate to the sanctity of judicial or administrative justice proceedings").  As support for this argument, defendant characterizes the Electoral College vote as a "ceremonial and predetermined" event "given the lack of discretion in

2

certifying the electoral vote," and, as such, "involv[ing] none of the requisite earmarks of an official proceeding proscribed by 18 U.S.C. § 1512." *Id.* at 8–9.

Defendant's position flatly ignores the entirety of the statute's text. The statute expressly defines "official proceeding" to include, *inter alia*, "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B). The certification of the Electoral College vote—a joint convening mandated by the Constitution—was clearly a proceeding. *See United States v. Caldwell*, 581 F. Supp. 3d 1, 11 (D.D.C. 2021) (Mehta, J.) (citing *Proceeding*, BLACK'S LAW DICTIONARY (8th ed. 2004) (defining the term to mean, among other things, "[t]he business conducted by a court *or other official body*" (emphasis added))). The Joint Session bore all the markings of an official body conducting its business in a format similar to a hearing. As Judge Friedrich aptly summarized, "[t]here is a presiding officer, a process by which objections can be heard, debated, and ruled upon, and a decision—the certification of the results—that must be reached before the session can be adjourned." *United States v. Sandlin*, 575 F. Supp. 3d 16, 23 (D.D.C. 2021).

In any event, defendant's argument is foreclosed by binding precedent. In *United States v. Fischer*, the D.C. Circuit held that congressional certification of the Electoral College count is an "official proceeding." 64 F.4th 329, 342 (D.C. Cir. 2023) ("The statutory definition of 'official proceeding' under § 1512(c)(2) includes a 'proceeding before the Congress.' Although appellees strain to argue that the Electoral College vote certification is not a 'proceeding before the Congress' because it does not involve 'investigations and evidence,' we see no such limit in the ordinary meaning of the word 'proceeding.'") (citations omitted). Although the decision in *Fischer* was fractured, with Judge Walker issuing an opinion concurring in judgment and Judge Katsas dissenting, all three judges on the panel agreed that the Electoral College vote was an "official proceeding" for the purposes of § 1512(c)(2). *See id.* at 361 (Walker, J., concurring)

("[T]he indictments should be upheld . . . because they allege that the Defendants 'corruptly obstruct[ed], influenc[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote."); *id.* at 364 (Katsas, J., dissenting) ("[T]he proceeding to certify the Electoral College vote plainly qualified as an 'official proceeding[.]'"). Accordingly, the Electoral College vote is plainly an "official proceeding" under § 1512(c)(2).[2]

Nonetheless, defendant alternatively asserts that interpreting Section 1512(c)(2)'s "official proceeding" requirement to encompass the Electoral College vote violates the *ex post facto* prohibition of the Fifth Amendment's Due Process Clause since the prosecution allegedly would involve a "novel construction" of the statute because, prior to January 6, 2021, courts "construed [§ 1512(c)(2) to] refer only to proceedings before a tribunal that mimic a court of law, or an investigation related to a judicial or quasi-judicial proceeding." Def.'s Mem. at 28–29. Defendant, however, misapprehends the purpose and effect of the *ex post facto* prohibition.

"The *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quotation marks omitted). Accordingly, the *ex post facto* prohibition in the Due Process Clause "is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191 (1977) (citation omitted). While "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope," *United States v. Lanier*, 520 U.S. 259, 266 (1997), judicial interpretation of a criminal

---

[2] For the same reasons, 18 U.S.C. § 1512(c)(2) is not unconstitutionally vague in its use of "official proceeding," undermining defendant's later argument. *See* Def.'s Mem. at 11–13.

4

statute violates due process only if it is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) (quotation marks omitted); s*ee also Johnson v. Kindt*, 158 F.3d 1060, 1063 (10th Cir. 1998) ("The test for determining whether the retroactive application of a judicial decision violates due process is essentially one of foreseeability.").

Defendant fails to explain how interpreting "official proceeding" to encompass the January 6, 2021 congressional certification of the Electoral College count is "unexpected and indefensible," *see Bouie*, 378 U.S. at 354 (quotation marks omitted), or even unforeseeable, particularly in light of the *Fischer* Court's holding that the Electoral College vote was plainly a "official proceeding" under the statute.  The mere fact that, prior to January 6, 2021, no court applied § 1512(c)(2) to the precise allegations here is beside the point because that attack on the U.S. Capitol was itself unprecedented.  The key issue to the *ex post facto* analysis is whether interpreting "official proceeding" in § 1512(c)(2) to cover the Electoral College vote is "fairly disclosed to be within [the statute's] scope," *Lanier*, 520 U.S. at 266.  As discussed above, § 1512(c)(2)'s application to the allegations in Count One is "fairly disclosed" by the text.  The Judges on this Court have uniformly rejected similar arguments for the same reason.  *See, e.g.*, *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26 (D.D.C. 2021); *United States v. Nordean*, 579 F. Supp. 3d 28, 52 (D.D.C. 2021).

Accordingly, the *ex post facto* prohibition does not require dismissal of Count I.

### 2. Section 1512(c)(2) Encompasses Defendant's Alleged Offense Conduct.

Next, defendant claims that "Count One must be dismissed because it fails to allege [defendant] took some action with respect to a document, record, or other object as required to [v]iolate 18 U.S.C. § 1512(c)(2)," citing the decision on this point in *United States v. Miller*, 589 F. Supp. 3d 60 (D.D.C. 2002). Def.'s Mem. at 10–11.  This argument is also foreclosed by *Fischer*,

5

which made clear that § 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election."  64 F.4th at 335; *see also id.* at 351 (Walker, J., concurring) ("[T]he Defendants' 'efforts to stop Congress from certifying the results of the 2020 presidential election' are the kind of 'obstructive conduct' proscribed by (c)(2).  I thus concur in the Court's judgment and join the lead opinion's interpretation of (c)(2)'s act element.") (citation omitted).  Given that § 1512(c)(2)'s *actus reus* element does not require that the government prove a defendant engaged in obstructive conduct with respect to a "record, document, or other object," as referenced in another subsection of the same statute, *see* 18 U.S.C. § 1512(c)(1), defendant's alleged offense conduct on January 6, 2021 is encompassed by § 1512(c)(2).

### 3. *Defendant's Due Process and Equal Protection Rights Are Not Violated.*

Defendant asserts that the government's application of § 1512(c)(2) in the instant case "violates his due process and equal protection constitutional rights" because the Indictment allegedly "demonstrates no basis for why [defendant] is charged under § 1512(c)(2) as compared to others not so charged whose conduct was similar or even more egregious to his," pointing to those who protested then-Judge Kavanaugh's confirmation hearings on Capitol Hill in September 2018, and those "who picketed U.S. Supreme Court Justices' homes in the wake of the leak of the draft opinion in a case."  Def.'s Mem. at 13–16.  In other words, defendant argues that apparent inconsistent charging decisions regarding violations of §1512(c)(2) somehow amounts to a violation of the equal protection guarantee of the Fifth Amendment's Due Process Clause.  *Id.*

Defendant's argument is baseless, however, because he has not shown—or even alleged—that the government's treatment of the different persons in the cases he cites "is a difference either based on a constitutionally suspect standard or lacking in rational justification."  *United States v. Bell*, 506 F.2d 207, 222 (D.C. Cir. 1974) (quotation marks omitted).  After all, the mere fact "[t]hat

6

different persons receive different treatment at the hand of Government does not, without more, demonstrate constitutional inequality" since "[p]rosecutorial discretion . . . is by its very nature exceedingly broad.'" *Id.* at 221–22; *see also United States v. Williams*, No. CR 21-0618 (ABJ), 2022 WL 2237301, at *18 (D.D.C. June 22, 2022) (rejecting argument that the government's approach to charging defendants with § 1512(c)(2) is "vague and arbitrary" because enforcing criminal laws necessarily 'requires the exercise of some degree of police judgment'") (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972)).[3]

### 4. Section 1512(c)(2)'s "Corruptly" Requirement Is Not Unconstitutionally Vague.

Defendant next attacks § 1512(c)(2)'s "corruptly" requirement, arguing that the element is unconstitutionally vague for various reasons, none of which is persuasive. *See* Def.'s Mem. at 16–20. The law is well-settled that the government may not deprive a person of life, liberty, or property without due process of law "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Set against this standard, the "corruptly" requirement is not impermissibly vague, as this Court has thoroughly explained in rejecting this argument previously. *See, e.g., United States v. Gillespie*, No. CR 22-60 (BAH), 2022 WL 17262218, at *4 (D.D.C. Nov. 29, 2022); *United States v. DeCarlo*, No. 21-cr-73 (BAH),

---

[3] To the extent defendant argues that the government's exercise of prosecutorial discretion renders the statute unconstitutionally vague, he is also mistaken. "[T]he presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague." *Kincaid v. District of Columbia*, 854 F.3d 721, 729 (D.C. Cir. 2017). That is because "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings[] or what precise charge shall be made." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (quoting *Newmann v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967)) (first alteration in original). As Judge Moss explained, "[t]he relevant question is not whether prosecutors have pursued every case in which a defendant may be charged under a given statute. All that is required is that the statute in question 'constrains a specific, objectively defined and observable behavior.'" *United States Montgomery*, 578 F. Supp. 3d 54, 84 (D.D.C. 2021) (quoting *Agnew v. Gov't of Dist. of Columbia*, 920 F.3d 49, 58 (D.C. Cir. 2019)). Section 1512(c)(2) sufficiently puts defendants on notice of prohibited conduct, and so critiquing the government's charging decisions is fruitless. *Id.* at 82.

Mot. Hr'g Tr. at 39–48, ECF No. 66 (D.D.C. Jan. 21, 2022); *United States v. Williams*, No. 21-cr-377 (BAH), Pretrial Conf. Tr. at 89–103, ECF No. 118 (D.D.C. June 10, 2022) (holding that, "given the textual difference of Section 1512(c)(2) taking on the intransitive meaning, the concern about the transitive reading of 'corruptly' undergirding the court's decision in [*United States v.*] *Poindexter*[, 951 F.2d 369 (D.C. Cir. 1991)], has no bearing on a prosecution brought today under Section 1512(c)(2)").[4] From the statute's plain text, defendant was on notice of the type of behavior criminalized under § 1512(c)(2). *See United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring) ("Statutory language need not be colloquial, however, and the term 'corruptly' in criminal laws has a longstanding and well-accepted meaning. It denotes an act done with an intent to give some advantage inconsistent with official duty and the rights of others.") (citations omitted).

Second, the panel majority in *Fischer* agreed that the term "corruptly" in § 1512(c)(2) could be defined, necessarily meaning that the term is not unconstitutionally vague. Judge Pan, writing for herself, explained that "corruptly" is not "capacious" and "note[d] that a narrow construction of 'corruptly' would indeed limit the actus reus of a § 1512(c)(2) violation." 64 F.4th at 339. "Without expressing a preference for any particular definition," Judge Pan outlined three potential definitions of corruptly. *Id.* at 339–40. Meanwhile, Judge Walker, in concurrence, held that

---

[4] Defendant relies on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), to support his argument that § 1512(c)(2) is impermissibly vague, *see* Def.'s Mem. at 17–20, but *Poindexter* undermines rather than bolsters his position. Although the D.C. Circuit held in *Poindexter* that "corruptly" was unconstitutionally vague as used in a different statute, 18 U.S.C. § 1505, this conclusion did not reach the use of "corruptly" as applied to all conduct. *Id.* at 378–79. Additionally, the law scrutinized in *Poindexter* would not prohibit a person making false statements to obstruct a proceeding but rather prohibited influencing another person to make false statements to obstruct a proceeding; in comparison, § 1512(c) was enacted to ensure that persons acting corruptly, without influencing or persuading others, could also be prosecuted for obstruction. *See Gillespie,* 2022 WL 17262218, at *4 n.4 (D.D.C. Nov. 29, 2022) (employing the same reasoning to deny defendant's motion to dismiss § 1512(c)(2) count; *accord DeCarlo*, Mot. Hr'g Tr. at 39–48. "Courts have since cabined *Poindexter*'s holding to its facts and have not read it 'as a broad indictment of the use of the word "corruptly" in the various obstruction-of-justice statutes.'" *Sandlin*, 575 F. Supp. 3d at 31 (citing *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998)).

"corruptly" "requires a defendant to act 'with an intent to procure an unlawful benefit either for himself or for some other person.'" *Id.* at 352 (Walker, J. concurring) (quoting *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting)). Although the definition of the term "corruptly" was not squarely at issue in *Fischer*, the guidance from Judges Pan and Walker confirms that this term in § 1512(c)(2) carries definitions that avoid vagueness concerns.[5]

### 5. Applying Section 1512(c)(2) to Defendant Does Not Violate the First Amendment.

Finally, defendant brings an as applied challenge under the First Amendment to Count One, asserting that his conduct on January 6, 2021 was protected expressive conduct. Def.'s Mem. at 22–26. To prevail on this argument, defendant must demonstrate that § 1512(c)(2) is unconstitutional as applied to his particular expressive activity, *Edwards v. Dist. Of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014), which means he must first show that his conduct is expressive and that the challenged statute "is related to the suppression of free expression," *Texas v. Johnson*, 491 U.S. 397, 403 (1989).

Defendant falls far short of satisfying this burden because the First Amendment has long been held not to protect obstructive conduct, even when that conduct has expressive elements. *See Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (holding that a statute proscribing picketing in front of a courthouse did not violate the First Amendment because the "statute does not prohibit picketing so intertwined unless engaged in in a manner which obstructs or unreasonably interferes with ingress or egress to

---

[5] Defendant alternatively contends that the rule of lenity requires dismissal of Count One because "[e]ven if the Court concludes that the government's interpretation (Count One) of § 1512(c)(2) is correct . . . it is not unambiguously so[,]" Def.'s Mem. at 20, but because the term "corruptly" is not ambiguous, defendant's argument fails. *See Barber v. Thomas*, 560 U.S. 474, 488 (2010) (explaining that the rule of lenity is applied only when "there remains a 'grievous ambiguity or uncertainty'" in the statutory provision).

9

or from the courthouse" and "the fact that free speech is intermingled with such conduct does not bring with it constitutional protection") (quotation marks omitted). Here, the indictment charges defendant with "corruptly obstruct[ing], influenc[ing], and imped[ing] . . . Congress's certification of the Electoral College vote[.]" Indictment ¶ 1. As the Judges on this Court have uniformly held, § 1512(c)(2)'s proscription of "corrupt" acts limits the applicability of its scope to conduct unprotected by the First Amendment. *See Caldwell*, 581 F. Supp. 3d at 34 ("Section 1512(c)(2) targets only 'corrupt' acts of obstructing, influencing, or impeding an official proceeding," so "it does not 'proscribe lawful or constitutionally protected speech.'" (quoting *United States v. Thompson*, 76 F.3d 442, 452 (2d. Cir. 1996)); *Nordean*, 579 F. Supp. 3d at 53 (holding that defendants' conduct, including unlawfully entering the Capitol building in an effort to obstruct the Electoral College vote, was "simply not protected by the First Amendment" because they were "charged with conduct involving acts of trespass, depredation of property, and interference with law enforcement, all intended to obstruct Congress's performance of its constitutional duties"); *United States v. Grider*, 617 F. Supp. 3d 42, 51–52 (D.D.C. 2022) (same); *Mostofsky*, 579 F. Supp. 3d at 26–27 (same); *United States v. Bozell*, No. 21-CR-216 (JDB), 2022 WL 474144, at *7 (D.D.C. Feb. 16, 2022) (same). Defendant makes no effort whatsoever to address or show any deficiency in the reasoning in any of these decisions, which reasoning this Court finds persuasive. This First Amendment challenge to application of § 1512(c)(2) to defendant accordingly fails.

### B.     Counts Two and Three Charging Violations of 18 U.S.C. § 1752

Defendant next moves to dismiss Count Two, which alleges that defendant "unlawfully and knowingly enter[ed] and remain[ed] in" such "a restricted building and grounds," in violation of 18 U.S.C. § 1752(a)(1), Indictment ¶ 2, and Count Three, which alleges that defendant "knowingly, and with intent to impede and disrupt the orderly conduct of Government business

and official functions, engage[d] in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds . . . when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions," in violation of 18 U.S.C. § 1752(a)(2), *id.* ¶ 3. According to defendant, dismissal of these two charges is warranted on the following three grounds: (1) only the United States Secret Service ("USSS") can designate "restrictive areas," and did not do so as to the Capitol Building and its grounds on January 6, 2021; (2) former Vice President Mike Pence, who was under USSS protection that day, was not "temporarily visiting" the Capitol on January 6, 2021; and (3) § 1752(a)(2) on its face and as applied is unconstitutionally vague. Def.'s Mem. at 26–30. All three arguments have been uniformly rejected by this and other Judges on this Court and remain unpersuasive for the reasons discussed below.

### 1. Section 1752(a) Does Not Require the Government to Prove That the "Restricted Building or Grounds" was Restricted at the USSS's Direction.

Defendant asserts that the Capitol building and grounds on January 6, 2021 were not "a restricted building or grounds," a required element of 18 U.S.C. § 1752(a), because Capitol Police, not the USSS, delineated the grounds as restricted. In making this assertion, defendant concedes that "the version of § 1752 in effect on January 6, 2021 (and currently) does not expressly require USSS restriction," but nonetheless points to "the legislative history of that statute [as] support[ing] that it is only the USSS that can designate a restricted building or grounds." Def.'s Mem. at 26–28. Defendant reasons that § 1752 "gave the Treasury Secretary the authority to 'designate by regulations the buildings and grounds which constitute the temporary residences of the President,'" presumably because when this statute was originally enacted, the USSS was part of the Department of the Treasury, *id.* at 27 (quoting 18 U.S.C. § 1752(d)(1)), and that for an area to be "restricted building or grounds," the area must thus be "designated" as such by the USSS, *see id.* Absent such

a designation by the USSS, defendant insists the Capitol was not a "restricted building or grounds" with the result that an essential element is missing for Counts Two and Three, thereby requiring dismissal of these two charges. *Id.* at 27–28.

The central problem with defendant's statutory interpretation argument, as this Court has already explained in *United States v. Herrera*, 21-cr-619, Memorandum & Order, ECF No. 54 at 2–5 (D.D.C. Aug. 4, 2022), and *United States v. Oliveras*, No. CR 21-738 (BAH), 2023 WL 196746, at *1–2 (D.D.C. Jan. 17, 2023), is that the statutory language on which the argument is predicated was removed from the statute in 2006. When Congress passed the USA PATRIOT Improvement and Reauthorization Act of 2005 ("Reauthorization Act"), Pub. L. No. 109-177, 120 Stat. 192 (2006), Congress removed the authority (and responsibility) of the Secretary of the Treasury, the USSS, or anyone else to "designate" the "buildings and grounds which constitute the temporary residences of the President or other person protected by the Secret Service," 18 U.S.C. § 1752(d)(1) (2004), and instead defined the locations covered by § 1752 as "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Reauthorization Act § 602(a)(1)(A), 120 Stat. at 252 (codified at 18 U.S.C. § 1752(a)(1) (2008)). The statute was further reorganized in 2012 to proscribe certain conduct simply in "any restricted building or grounds" and then separately defining "restricted buildings or grounds" as including, *inter alia*, "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Federal Restricted Buildings and Grounds Improvement Act of 2011 § 2, Pub. L. No. 112-98, 126 Stat. 263, 263–64 (2012) (codified at 18 U.S.C. § 1752(a), (c)(1)(B)). That language remains in force.

The plain meaning of the current text of § 1752 contains no requirement that anyone, including the USSS, formally "designate the area 'restricted,'" Def.'s Mem. at 27, other than by posting, cordoning off or otherwise restricting the area temporarily visited by a USSS protectee. To be sure, the USSS is still relevant to the definition of "restricted building or grounds" given that the Vice President is not expressly named in the statute but rather is covered by his indisputable status as a "person protected by the Secret Service." *See* 18 U.S.C. § 1752(c)(2) (defining such a person as "any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection"); *id.* § 3056(a)(1) (authorizing USSS protection of the Vice President). Nevertheless, nothing about this text or any other authority supports defendant's inferential leap that since it is the USSS who "protects the President or 'other person,' the USSS must designate the area 'restricted.'" Def.'s Mem. at 27. If anything, the statutory history recounted above demonstrates a movement away from a formal "designation" process to one that operates more automatically by virtue of the presence of a USSS protectee.

### 2. Former Vice President Pence Was "[T]emporarily [V]isiting" the Capitol Building on January 6, 2021.

Defendant further argues that former Vice President Pence was not "temporarily visiting" the Capitol Building on January 6, 2021, within the meaning of 18 U.S.C. § 1752(c)(1)(B), because "he has a permanent office in the Capitol Building and regularly worked there." Def's Mem. at 27–28. Given that § 1752 defines "restricted building or grounds" as those where a USSS protectee is only "temporarily visiting[,]" 18 U.S.C. § 1752(c)(1)(B), defendant maintains that Counts Two and Three must be dismissed because defendant's offense conduct did not occur "in" or "within such proximity to" a "restricted building or grounds." *Id.* This argument has been uniformly rejected by every Judge on this Court to consider it, including the undersigned, *see, e.g., Oliveras*,

13

2023 WL 196746, at *2; *United States v. Puma*, 2022 WL 823079, at *17 (D.D.C. Mar. 19, 2022); *United States v. Andries*, No. CR 21-93 (RC), 2022 WL 768684, at *16-17 (D.D.C. Mar. 14, 2022); *United States v. McHugh*, 583 F. Supp. 3d 1, 35 (D.D.C. 2022); *United States v. Rodriguez*, No. CR 2 (ABJ), 2022 WL 3910580, at *16 (D.D.C. Aug. 31, 2022), and no persuasive reason is presented here to deviate from these rulings.

Common sense easily resolves these challenges to Counts Two and Three. Despite having a limited role as President of, and tiebreaker for, the Senate, U.S. CONST. art. I, § 3, cl. 4, the Vice President is generally regarded as an executive branch officer, *see id.* art. II, § 1, cl. 1, and generally works in locations other than the Capitol. The fact that the Vice President has a space set aside in the Capitol for occasional use—notably, not the location where Vice President Pence was working inside the Capitol on January 6, 2021—makes this official no less a "visitor" and no less "temporary" when making an occasional appearance on the premises of the Capitol. *See United States v. Williams*, Case No. 21-cr-618 (ABJ), 2022 WL 2237301, *19–20 (D.D.C. June 22, 2022). The Vice President's presence for official duties by presiding over a session of Congress does not make him any less of a temporary visitor because a government official can clearly appear somewhere temporarily and still be doing official work in the process.

Even were the words "temporarily visiting" at all ambiguous—a view at odds with a plain reading of the words—the structure of the statute makes clear that defendant's preferred reading would produce absurd results. Under § 1752, certain conduct is criminalized in certain sensitive areas around both the President and the Vice President. The residences of both, whether the occupant is present or not, are covered at all times. 18 U.S.C. § 1752(c)(1)(A). When either official is "temporarily visiting" some other location, a *de facto* bubble follows him or her and affords similar protection. *Id.* § 1752(c)(1)(B). All of this makes sense. Defendant's

interpretation, however, would inexplicably pop that bubble for an ill-defined set of destinations where the President or Vice President's presence is sufficiently "frequent" or the reason for their presence sufficiently "official." The Court, again, declines to introduce such needless ambiguity into a simple statutory phrase.

### 3. Section 1752(a)(2) is not Unconstitutionally Vague.

Defendant's final argument is that the statutory language "within such proximity" in § 1752(a)(2) "is vague and ambiguous, and therefore as applied violates [defendant's] Due Process Clause rights." Def.'s Mem. at 28–30. Defendant's argument is, however, meritless because Count Two charges that defendant "remain[ed] *in* a restricted building and grounds," and Count Three provides that defendant was "*in* and within such proximity to, a restricted building and grounds." Indictment ¶¶ 2, 3 (emphasis added). Whatever line-drawing problems that the statutory phrase "within such proximity" introduces to § 1752(a)(2) are beside the point because the government intends to prove that defendant was in, not just that he was in proximity to, "a restricted building and grounds." Judges on this Court have uniformly rejected the same argument defendant makes here for this precise reason. *See, e.g.*, *United States v. Neely*, No. CR 21-642 (JDB), 2023 WL 1778198, at *4 (D.D.C. Feb. 6, 2023) (rejecting defendant's vagueness challenge to the statutory phrase "within such proximity" in § 1752(a) because "[t]he government allege[d] that the Capitol was a restricted building within the meaning of § 1752 and that [the defendant] was in the Capitol"); *Nordean*, 579 F. Supp. 3d at 60, n.16 (same); *United States v. Griffith*, No. 21-CR-244, 2023 WL 1778192, at *3 n.4 (D.D.C. Feb. 6, 2023) (same). Defendant, again, has provided no reason why the persuasive reasoning in these decisions should be eschewed, so his argument is rejected.

## II.  ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant's Notice of Pretrial Motions (Parts I and II) seeking to dismiss Counts One, Two, and Three, ECF No. 46, is **DENIED**.

**SO ORDERED.**

Date: May 8, 2022

_____
BERYL A. HOWELL
District Judge
