UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK STEDMAN,<br><br>Defendant. | Criminal Action No. 21-383 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

Defendant Patrick Stedman, who is facing trial on June 5, 2023, on a five-count indictment stemming from his alleged conduct at the U.S. Capitol on January 6, 2021, seeks (1) to exclude evidence, under Federal Rules of Evidence 401, 402, and 403, regarding any events on January 6, 2021 for which defendant was not present and did not observe; and (2) expanded *voir dire* and additional peremptory challenges during jury selection. Def.'s Not. of Motions at 1 (Parts III and IV), ECF No. 46; Def.'s Br. in Supp. Pretrial Mot. ("Def.'s Mem.") at 31–37, ECF No. 46-1.[1] Both motions are denied for the reasons outlined below.

**I.  Admissibility of General Evidence of Events at the U.S. Capitol Building and Grounds on January 6, 2021.**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. Generally, "[i]rrelevant evidence is not admissible," FED. R. EVID. 402, but even if relevant, the evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury,

---

[1] Defendant filed all pretrial motions in a single motion, with Parts I and II addressed in a separate Memorandum Opinion and Order, ECF No. 57.

1

undue delay, wasting time, or needlessly presenting cumulative evidence," FED. R. EVID. 403. According to Rule 403's plain text, this exclusionary rule does not bar all potentially prejudicial evidence. Instead, the term "unfair prejudice" "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Advisory Committee's Note, Federal Rule of Evidence 403). "Rule 403 'tilts . . . toward the admission of evidence in close cases." *Id.* at 474 (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)).

These evidentiary standards make untenable defendant's instant motion to exclude "video or other footage or testimony about the conduct of other persons present on the Capitol Building grounds or in the Capitol Building, including physical assault on any other person, property destruction, movement of barricades or other barriers, verbal threats to other persons, non-verbal threats to other persons, or other such words or actions that were not observed by" defendant. Def.'s Mem. at 31. In his view, "[a]ny action and words of which [he] was not personally aware could not possibly have impacted his state of mind, and thus are irrelevant and inadmissible." *Id.*

The glaring omission in defendant's facile position is the obvious relevance of the general context in which he allegedly engaged in the offense conduct with which he is charged. *See* Gov't's Opp'n to Def.'s Mot. in Limine Regarding Preclusion of Evidence and Jury Selection ("Gov't's Opp'n") at 1–4, ECF No. 55. The sheer numbers of individuals making up the mob that marched on the U.S. Capitol on January 6, 2021—without stopping at the fencing or the barricades or the police lines or the chemical spray and other crowd control tools deployed by law enforcement—had the effect of overwhelming law enforcement officers attempting to secure the Capitol, with the direct consequence of creating a catastrophic security risk requiring the evacuation of lawmakers, staff, and press representatives legitimately gathered inside the Capitol

building that day to conduct, facilitate, and observe the certification of the Electoral College vote count and triggering a lengthy delay before this constitutionally-mandated proceeding could resume. *See id.* at 2–3. The property damage and violence against law enforcement officers that occurred on January 6, 2021, at the U.S. Capitol, resulted in the breach of restricted grounds and the Capitol building itself, and thus is relevant to the threat that the mob of people posed to the safety of both law enforcement and lawmakers, whether before, during, and after the latter's evacuation from the Capitol building. *See id.* at 2. Evidence of the magnitude of this mob that descended on the Capitol is also relevant to contextualizing law enforcement's threat mitigation efforts that day and the challenge law enforcement had in dealing with any specific individual's criminal conduct. *See id.* All such general evidence about the events on January 6—even if defendant did not personally observe all of the conduct engaged in by others in multiple parts of the Capitol Building and restricted grounds—assists the jury in better understanding the parties' actions that day and thus the alleged criminal conduct of defendant.

The specific charges defendant faces also require general evidence of events on January 6, 2021, to prove elements of those offenses. For example, defendant is charged in Count One with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), *see* Indictment ¶ 1, ECF No. 18, which requires the government to show that the Electoral College vote taking place that day was an "official proceeding" and that defendant's conduct "influence[d], delay[ed], or prevent[ed]" that "proceeding." *Id.* Additionally, Count One charges defendant with Aiding and Abetting in violate of 18 U.S.C. § 2, which provides, in pertinent part, that anyone who "commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." *Id.* § 2(a). As the Supreme Court has held in *Rosemond v. United States*, 572 U.S. 65 (2014), "[t]o aid and abet a crime, a defendant must not just 'in some

3

sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'" *Id.* at 76 (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)). Plainly, others' actions on January 6 at the Capitol, in combination with defendant's own actions, are relevant to whether a federally protected function—*i.e.*, the Electoral College vote certification—was obstructed, delayed, or adversely affected, and defendant's knowing joinder of a broader crowd is probative of his participation in a venture that interfered with a congressional proceeding.

Defendant doubles down in arguing that "the unfair prejudicial impact of any evidence" of illegal conduct by others "would substantially outweigh any minimal probative value to be obtained from that evidence." Def.'s Mem. at 32. This concern is overblown. To the extent that other members of the mob, even in defendant's vicinity, engaged in criminal conduct, defendant's conduct may be viewed more positively in comparison. Moreover, defendant has an effective tool with cross-examination effectively to differentiate himself from other rioters. In short, the contextual evidence of the conduct of others is so probative of the charges defendant faces that the probative value "substantially outweighs" the risk of unfair prejudice. FED. R. EVID. 403.

Judges on this Court, including the undersigned, have denied similar motions *in limine* in criminal cases stemming from the January 6, 2021 attack on the Capitol Building for the same or substantially similar reasons. *See, e.g.*, *United States v. Gillespie*, 22-CR-60 (BAH), Memorandum & Order, ECF No. 43 (D.D.C. Nov. 30, 2022) (Howell, C.J.) (denying defendant's motion in *limine* seeking to exclude "'general evidence' of the events on January 6, 2021, including testimony, videos, photos, or other exhibits from sites at and around the U.S. Capitol where defendant was not located," pursuant to Federal Rules of Evidence 401, 402, and 403, for the same reasons outlined above); *United States v. Griffith*, No. CR 21-244-2 (CKK), 2023 WL 2043223,

at *2–*3 (D.D.C. Feb. 16, 2023) (denying defendant's motion *in limine* seeking "to exclude 'all conduct by others other than defendant,'" pursuant to Rules 401, 402, and 403 because "the collective nature of the mob likens these cases to those involving criminal conspiracies where individuals work in concert to achieve a collective goal" and "this 'general' evidence is a far cry from Defendant's prior 'bad acts' that implicate any risk of prejudice") (emphasis omitted); *United States v. MacAndrew*, No. CR 21-730 (CKK), 2022 WL 17961247, at *3 (D.D.C. Dec. 27, 2022) (similar); *United States v. Carpenter*, No. CR 21-305 (JEB), 2023 WL 1860978, at *3–4 (D.D.C. Feb. 9, 2023) (similar). Given that defendant fails to address or show any deficiency in the reasoning in any of these decisions, they remain persuasive here for the reasons outlined above.

Accordingly, defendant's motion *in limine* to exclude any evidence of what occurred on January 6, 2021 that he personally did not observe is denied.

**II.     Expanded *Voir Dire* And Additional Peremptory Challenges Are Unnecessary.**

As part of his motion *in limine*, defendant adds requests that have nothing to do with any limitations on evidence at trial but instead relate to "expanded *voir dire* and additional peremptory challenges." Def.'s Mem. at 32. Specifically, defendant asks the Court to: (1) send a questionnaire to summoned prospective jurors, after review and approval by the Court, with the parties present during any pre-screening questioning the Court conducts before formal *voir dire*, *id*. at 35; (2) allow "individual questioning" during *voir dire*, which apparently means attorney-conducted *voir dire*, *id*.; and (3) expand the number of peremptory challenges to be used by defendant from ten to twenty, *id*. at 36–37. Each of these requests are denied as unnecessary.

With respect to defendant's requests for a questionnaire and attorney-conducted *voir dire*, the law is clear that "the trial court retains great latitude in deciding what questions should be asked on *voir dire*," *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991); *accord United States v. Tsarnaev*,

142 S. Ct. 1024, 1034 (2022), including in the "mode and manner of proceeding" and "the range of questions put to the prospective jurors," *United States v. Littlejohn*, 489 F.3d 1335, 1342 (D.C. Cir. 2007) (quoting *United States v. Robinson*, 475 F.2d 376, 380 (D.C. Cir. 1973)).  That discretion will be exercised here by rejecting defendant's request for a questionnaire and party-conducted *voir dire*.  To start, requiring prospective jurors in a venire to respond to a questionnaire would consume time as well as judicial and party resources to prepare a written questionnaire and additional court resources to mail, collect, and review responses.  Such an undertaking for a questionnaire is wholly unnecessary here. The parties are required to submit proposed *voir dire* questions directly to the Court as part of their Joint Pretrial Statement, *see* Standing Order ¶ 10(c), ECF No. 35, and, consequently, any concern about "[p]redetermined views" held by prospective jurors, Def.'s Mem. 35, may be addressed through those proposed and the Court's supplemental questions during in person, oral *voir dire* rather than in a written questionnaire.  At the time of jury selection, prospective jurors will be able to respond to questions posed collectively and then to follow-up questions on an individual basis outside the presence of the other prospective jurors. Any questions that would be posed on a questionnaire may be posed orally during *voir dire*.  This is certainly not a case requiring a lengthy period of jury service, which is the more typical circumstance deemed to warrant a special questionnaire to ensure an adequate venire of prospective jurors able to serve.

With one exception, *see United States v. Alford*, No. CR 21-263 (TSC), ECF No. 46 at 14–15 (D.D.C. Apr. 18, 2022) ("*Alford* Order"), no other Judge on this Court has adopted use of a questionnaire for trials of single (or even multiple) defendants on charges arising from the attack on the U.S. Capitol on January 6, 2021.  *See, e.g., United States v. Nassif*, No. CR 21-421 (JDB), 2022 WL 4130841, at *11 (D.D.C. Sept. 12, 2022) (declining to adopt any special *voir dire*

6

procedures, including individual questioning and using questionnaires, explaining that most courts "have empaneled juries in January 6 cases without resorting to enhanced protocols"); *United States v. Rhine*, No. CR 21-0687 (RC), 2023 WL 372044, at *5 (D.D.C. Jan. 24, 2023) (rejecting "[d]efendant's request for a written juror questionnaire"); *United States v. Chwiesiuk*, No. CR 21-536 (CKK), 2023 WL 2562517, at *7 (D.D.C. Mar. 17, 2023) (same). In sum, defendant's requested use of a written questionnaire to prospective jurors is superfluous and unnecessary here.

Defendant further requests attorney-conducted *voir dire*. The applicable procedural rule gives the Court discretion to "examine prospective jurors or [] permit the attorneys for the parties to do so." FED. R. CRIM. P. 24(a). To be sure, some Judges on this Court allow counsel to ask follow-up questions during *voir dire*. *See, e.g.*, *Alford* Order at 14–15, *Rhine*, 2023 WL 372044, at *5 ("The Court grants Defendant's alternative request for individual questioning during *voir dire*."); *Chwiesiuk*, 2023 WL 2562517, at *7 (explaining that the Court's "trial procedures order" already allows counsel to "pose brief follow-up questions" to potential jurors during *voir dire*). This is a matter of discretion, however. Allowing attorney-conducted *voir dire* may invariably, as the government notes, "take more time and will increase the risk that improper or leading questions are asked to prospective jurors." Gov't's Opp'n at 5; *see also* C.J. Williams, *To Tell You the Truth, Fed. Rule of Criminal Procedure 24(A) Should Be Amended to Permit Attorneys to Conduct Voir Dire of Prospective Jurors*, 67 S. C. L. REV. 35, 62 (2015) (acknowledging, without rebutting, the criticism "that attorneys abuse the opportunity to question prospective jurors by trying to improperly influence them"); Reid Hastie, *Is Attorney-Conducted Voir Dire an Effective Procedure for the Selection of Impartial Juries?,* 40 AM. U. L. REV. 703, 705 (1991) ("[A] negative factor in jury selection relates to attorney use of *voir dire* to systematically indoctrinate jurors by creating doubts about the credibility of opposition witnesses, or construing the evidence or the law

in a manner to favor their side of the case[.]"). With the Court in control of *voir dire* questioning, the risk of potential jurors being prejudiced or influenced by counsel's questioning is significantly mitigated if not outright eliminated.

In the view of this Court, defendant's request for attorney-conducted *voir dire* is both unnecessary and counterproductive. During the jury selection process, the Court will pose questions collectively to the venire panel as a whole, based upon input from the parties through proposed *voir dire* questions submitted as part of the Joint Pretrial Statement. Then, follow-up questions will be asked of prospective jurors individually, as necessary, after consultation with counsel for defendant and the government. *See* FED. R. CRIM. P. 24(a)(2)(B) ("If the court examines the jurors, it must permit the attorneys for the parties to: . . . submit further questions that the court may ask if it considers them proper."). Thus, counsel for both parties will have the opportunity to propose to the Court follow-up questions to be posed to prospective jurors to ensure a searching *voir dire* without unnecessarily delaying the jury-selection process and risking prejudicing potential jurors.

Finally, defendant's request for double the number of peremptory challenges allowed under the governing procedural rules is denied. Federal Rule of Criminal Procedure 24(b)(2) provides that a defendant in a non-capital, felony case is entitled to ten peremptory challenges, with additional peremptory challenges only expressly allowed when the trial involves "multiple defendants," FED. R. CRIM. P. 24(b). Given that only a single criminal defendant is on trial in this felony case, the circumstance contemplated under the applicable rule for an increased number of peremptory challenges is plainly inapplicable. Defendant has identified no authority to exceed the number of ten peremptory challenges provide in Rule 24, nor provided any persuasive reason why the authorized number is insufficient "to ensure that he receives his right to a fair and impartial

jury." Def.'s Mem. at 32. As defendant concedes, "peremptory challenge[s] ha[ve] never been held to be constitutionally mandated by the Supreme Court," *id.* at 37 (quoting *Boone v. United States*, 483 A.2d 1135, 1138 (D.C. Cir. 1984)), and he has provided no persuasive reason why additional ones should be granted here, even if permitted under Rule 24.

Defendant's request for an expanded number of peremptory challenges is accordingly denied.

### III.   ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant's Notice of Motions (Parts III and IV), ECF No. 46, are **DENIED**.

**SO ORDERED.**

Date: May 8, 2023

                                                                  _____
                                                                  BERYL A. HOWELL
                                                                  District Judge