**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No: 21-cr-383 (BAH)** |
| **v.** | : | |
| | : | |
| **PATRICK ALONZO STEDMAN,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>UNITED STATES' MEMORANDUM IN SUPPORT OF RESENTENCING</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum for resentencing in connection with the above-captioned matter.

The defendant, Patrick Alonzo Stedman ("Stedman"), a dating and relationship coach for men and a social medial influencer, used his significant online presence to encourage and organize other men to come to Washington D.C. on January 6, telling his followers on the night before, "Now we FIGHT!" Once at the Capitol building, he and two of these men illegally entered the U.S. Capitol building to prevent Congress from certifying the results of the 2020 Presidential election. While inside the Capitol for over 40 minutes, Stedman was part of a disorderly mob that overran police lines in the Crypt, entered the offices of the Speaker of the House, then massed at the main door to the House Chamber, chanting "break it down!" as rioters banged on the door to the Chamber. After learning that another rioter had been shot by police, Stedman shouted threats at officers of the U.S. Capitol Police, including "You killed one of us? You're done!" Immediately after exiting the Capitol building, Stedman recorded a video for his followers, explaining that he had "taken action" to prevent Congress from certifying the results of the presidential election.

For his efforts to impede police officers who tried to prevent the invasion of the Capitol building and to overturn the election results, this Court previously sentenced defendant Stedman to serve 48 months' incarceration. At the initial sentencing hearing, this Court found that Stedman had provided "materially false testimony during his trial when he testified." 9/8/23 Sent. Tr. at 30. In particular, this Court found "his statement at trial that he believed he had permission to enter the Capitol Building on January 6, 2021, is simply incredible." *Id.* at 32.

As this Court also found at the initial sentencing hearing, Stedman's conduct was of the utmost seriousness and the 48-month sentence imposed was sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Although the government has agreed that Stedman's conviction for violation of 18 U.S.C. § 1512(c)(2) must be vacated in light of the intervening decision in *Fischer v. United States*, 603 U.S. 480 (2024), Stedman's egregious conduct and false trial testimony has not changed. *See United States v. Hostetter*, 21-CR-392-RCL, ECF 507, at 4-5 (cleaned up) ("*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021, in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct."). Accordingly, for the reasons set forth below, the United States requests that the Court resentence Stedman to a total of 30 months of incarceration, three years of supervised release, $2,000 in restitution, and a mandatory assessment of $25 per Class A misdemeanor and $10 per Class B misdemeanor. As explained below, to achieve this sentence, this Court should impose consecutive sentences on some counts. The gravity of Stedman's criminal acts and intent require no less.

I.    **FACTUAL BACKGOUND**

a.  **Stedman's Role in the Capitol Attack**

Stedman's role in the Capitol attack has been well documented. The Government need not recount it at length here and refers the Court to the Government's 2023 Sentencing Memo for a full discussion of Stedman's criminal conduct. *See* ECF No. 83 ("Government's 2023 Sentencing Memo").

In the days leading up to January 6, 2021, Stedman used his significant online presence to encourage and organize "a TEAM" of other men to come to Washington D.C. on January 6, telling his followers, "This is the second American Revolution" and "NOW WE FIGHT!"

Within 10 minutes of the initial breach of the Capitol, Stedman had entered the building with two of these men through a door that he knew had been broken into by other rioters. While inside the Capitol for over 40 minutes, Stedman was part of a disorderly mob, shouting "It's our fucking house!" as rioters overran a line of police. He entered the offices of the Speaker of the House, where he took photos and videos of himself, smiling, as the riot raged around him, and glibly texted a friend, "I'm in [the Speaker's] office. LOL."

Stedman made his way to the main door of the House Chamber, where Members of Congress and Congressional staff sheltered inside as Capitol Police officers barricaded the door from the inside with guns drawn. As other rioters banged on the door, smashing the glass window, Stedman shouted, "Break it down!" and "Let us in!" When Stedman learned that another rioter had been shot by police, he shouted threats at the police, including, "You killed one of us? You're done!"

Moments after exiting the Capitol building, Stedman recorded a video for his followers, explaining that he had "taken action" to prevent Congress from certifying the results of the presidential election and that the "rats" – as he referred to Members of Congress – had "scurried into the tunnels" to escape. As other rioters continued to stream past him into the building, he threatened, "If they go ahead,

and they certify this bullshit, it's fucking treason. It's fucking treason, and if Trump doesn't take action, we're taking action."

**b. Stedman's Post-Conviction Statements and Lack of Remorse**

At Stedman's original sentencing hearing the Court found it "troubling" that Stedman had "defend[ed] the Capitol attack" and "promote[d] disinformation." 9/8/23 Sent. Tr. at 87. The Court noted that Stedman had used Twitter to encourage people to come to Washington D.C. and to "bring the fight to the Capitol Building." *Id.* at 88. Noting that Stedman's followers on Twitter had increased from 25,600 to over 40,000 since January 6, the Court "urged" Stedman not "to use that platform to disseminate more disinformation and divisiveness in this country." *Id.* at 97.

In contemptuous disregard of that directive, Stedman has continued to disseminate disinformation and stoke divisiveness online. In an essay published on his business website on January 6, 2024, he stated that 2024 was going to be a "decisive moment in our war for America" and a "dramatic, even cataclysmic year" and predicted that "[b]y the time this is all over, and the dust of 2024 has settled, this country will be brought to its knees." The essay, entitled the "The American Soul," encourages his followers to "take action," and addresses in particular "the ones who know 2020 was stolen, but still haven't gotten engaged in the fight – understand: if you let them take 2024 from you too, you let them take it all." While not overtly advocating violence, the essay closes by referencing January 6, 2021 – "Three years ago, over a million Americans showed up in Washington to try. Some paid the ultimate price and hundreds more have since suffered behind bars, with many more to come" – and exhorts his followers "When that moment of truth arrives, don't let us down."

Since then, Stedman has continued to disseminate disinformation and divisiveness with his online posts. In a November 6, 2024 essay on his website entitled "The Election," he falsely claimed vote-counts were stopped, and ballots were dumped during the 2020 Presidential election. He lied about the actions of

4

supposedly nefarious poll workers, and about court challenges being "rejected due to lack of standing, or…ignored by the apparatchiks committing crimes — without consequence." He lied that "[i]t was apparent fraud was rampant all over, and no one in the system was willing to stop it."

Referencing the just completed November 2024 election, he claimed it mattered more than the 2020 election because "it is about my personal freedom and exoneration." In that post, he urged the launching for a "true investigation" where "the truth about what they did to us will be revealed, and real justice will be meted out." He also expressed his concerns over whether the losing candidate and party would concede the election and posited that "[t]hey wouldn't just let us take it. They couldn't just let us win. As always, we'd have to fight for it." He concluded by stating "while they still have the ability to create chaos, I don't trust them to honor it."  Those concerns have now been shown to be as bogus as Stedman's false claims about the 2020 election, as the current Vice President promptly conceded her defeat in the 2024 election and there have been no efforts to overturn the results of that election.

## II.    Relevant Procedural History

### a. Conviction and Original Sentence

On June 9, 2023, after a one-week trial, a jury convicted Stedman of all five counts with which he was charged: (1) Obstruction of an Official Proceeding, 18 U.S.C. §§ 1512(c)(2) and 2; (2) Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2); (4) Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D); and (5) Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G). ECF No. 73, 06/09/2023 Minute Entry.

### b. Stedman's First Sentencing Hearing

During Stedman's initial sentencing in 2023, the then-applicable United States Sentencing Guidelines (U.S.S.G. or "Guidelines") took into account not only the seriousness of his felony and misdemeanor convictions, but also the totality of his conduct and the relevant surrounding circumstances as described above.

### c. The Guidelines Calculation at the Original Sentencing Hearing

At the sentencing hearing on September 8, 2023, the applicable Sentencing Guidelines range was driven by Count One; the Court grouped Counts Two and Three with Count One. 9/8/23 Sent. Tr. at 51. A summary of the Court's guidelines analysis is as follows:

*Count One* (18 U.S.C. § 1512(c)(2))

| | | |
|---|---|---|
| Base Offense Level | §2J1.2(a) | 14 |
| Specific Offense Characteristic | §2J1.2(b)(1)(B)-Threatening/Admin of of Justice | +8 |
| Specific Offense Characteristic | §2J1.2(b)(2)-Substantial Interference | +3 |
| Adjustment | §3C1.1 – Obstruction of Justice | +2 |
| **Total** | | **27** |

6

*Count Two* (18 U.S.C. § 1752(a)(1)):

| | | |
|---|---|---|
| Base Offense Level | §2B2.3(a) | 4 |
| Specific Offense Characteristic | §2B2.3(b)(1)(A)(vii) | +2 |
| BOL Adjustment | §2B2.3(c)(1) and 2X1.1(a) | 25 |
| Adjustment | §3C1.1 – Obstruction of Justice | +2 |
| **Total** | | **27** |

*Count Three* (18 U.S.C. § 1752(a)(2)):

| | | |
|---|---|---|
| Base Offense Level | §2A2.4(a) | 10 |
| Adjustment | §3C1.1 – Obstruction of Justice | +2 |
| **Total** | | **12** |

*See* 9/8/23 Sent. Tr. at 50-53.

**Combined Adjusted Offense Level (OL): 27**

The U.S. Probation Office calculated Stedman's criminal history as Category I, based on a criminal history score of zero. PSR at ¶ 46. With a total offense level of 27, the Court calculated Stedman's Guidelines imprisonment range during the original sentencing as 70-87 months. 9/8/23 Sent. Tr. At 52-53.

The Court found that Stedman had provided "materially false testimony during his trial when he testified." 9/8/23 Sent. Tr. at 30. Among the material misrepresentations noted, the Court found "his statement at trial that he believed he had permission to enter the Capitol Building on January 6, 2021, is simply incredible." *Id.* at 32.

The Government asked the Court to impose a sentence of 78 months' incarceration. The Court varied downward from the Guidelines range to address the disparity in sentencing severity arising from the accumulation in offense levels for specific offense characteristics under U.S.S.G. § 2J1.2(b)(1)(B) and (b)(2), citing two cases with similarly situated defendants, *United States v.*

*Bledsoe*, 21-cr-204 (BAH) and *United States v. Herrera*, 21-cr-619 (BAH). *Id.*, at 100-104.[1] The Court sentenced Stedman to 48 months of incarceration to be followed by 36 months of supervised release. 09/08/2023 Minute Entry.

### III.    Stedman's Appeal and the Impact of *Fischer*

On September 20, 2023, Stedman appealed his conviction and sentence (ECF No. 89). On June 28, 2024, while Stedman's conviction was still on appeal, the Supreme Court issued its opinion in *Fischer v. United States*, 603 U.S. 480 (2024). The Court held that 18 U.S.C. § 1512(c) does not cover "all means of obstructing, influencing, or impeding any official proceeding." Rather, to prove a violation of § 1512(c)(2), the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding – such as witness testimony or intangible information – or attempted to do so. *Id.* at 493-94.

On August 28, 2024, after *Fischer* came down but while Stedman's appeal was still pending, this Court granted Stedman's motion to be released. He was released on October 27, 2024 - 12 months after he was incarcerated. ECF 103.

On September 9, 2024, upon agreement of the parties, the Court of Appeals for the District of Columbia vacated Stedman's conviction under 18 U.S.C. § 1512(c)(2) and remanded the case to this Court for further proceedings. ECF 104-1. This Court ordered the parties to brief their positions on the nature and extent of further proceedings permissible under the Court of Appeals' remand. 9/25/24 Minute Order. The Court then granted the government's request for a limited

---

[1]  Neither case has yet been resentenced by the Court, though both have sentencing hearings pending. Presently *United States v. Bledsoe* is set for resentencing on January 10, 2025, and *United States v. Herrera* is set for resentencing on January 24, 2025.

resentencing and set a briefing schedule and date for resentencing. 11/14/24 Minute Order. The present pleading is submitted by the government in compliance with that Minute Order.

### IV.    The Revised Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 45 (2007); *Rosales-Mireles v. United States*, 585 U.S. 129, 133 (2018) ("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."). [T]he Guidelines remain the foundation of federal sentencing decisions." *Hughes v. United States*, 584 U.S. 675, 685 (2018). "As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49.

### a.   Analysis for each count

**Count Two: 18 U.S.C. § 1752(a)(1) - Entering and Remaining in a Restricted Building or Grounds**

| Base Offense Level | 4 | U.S.S.G. §2B2.3(a) |
|---|---|---|
| Specific Offense Characteristic | +2 | U.S.S.G. §2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted building or grounds." |
| Adjustment | +2 | U.S.S.G. § 3C1.1: "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense" |
| Total | 8 | |

**Count Three: 18 U.S.C. § 1752(a)(2) - Disorderly and Disruptive Conduct in a Restricted Building or Grounds**

| Base Offense Level: | 10 | U.S.S.G. §2A2.4(a) |
|---|---|---|
| Adjustment | +2 | U.S.S.G. §3C1.1: "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the |

9

| | | |
|---|---|---|
| | | administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense" |
| Total | 12 | |

Counts Two and Three group because both involve the same victim: Congress. U.S.S.G. § 3D1.2(d). The offense level for that Group is the level "for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group." U.S.S.G. § 3D1.3(a). Since Count Three has the highest offense level for the counts in the group, the offense level for the group is 12. And because there is only one group, the total adjusted offense level is the level for that group: 12.

**Counts Four and Five: 18 U.S.C. §§ 5014(e)(2G) and (e)(2)(D)**

The guidelines do not apply to these offenses.

**b. Stedman is not Entitled to an Adjustment Under U.S.S.G. § 4C1.1 for Certain Zero-Point Offenders**

U.S.S.G. § 4C1.1 provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. As this Court found during the initial sentencing hearing, § 4C1.1 does not apply in this case because Stedman used "credible threats of violence in connection with the offense[s]." *See* U.S.S.G. § 4C1.1(a)(3). This Court explained that "in a heated moment, with rioters bearing down on law enforcement and aware that law enforcement had killed a member of the mob, the defendant yelled a flagrant threat against law enforcement, further galvanizing an already tense situation right outside the House Chamber doors." 9/8/23 Sent. Tr. at 50.

### c. Criminal History and Guidelines Range

Stedman has no criminal convictions and therefore is not assigned criminal history points. PSR ¶ 46. The U.S. Probation Office calculated Stedman's criminal history as category I, which is not disputed. Accordingly, Stedman's Guidelines imprisonment range is 10-16 months' imprisonment, though the sentence imposed on any individual count is restricted to the statutory maximum for that count, which is 12 months for Counts Two and Three and six months for Counts Four and Five.

### V. The Government's Resentencing Request

The government recommends that the Court impose a total sentence of 30 months incarceration on the four offenses for which Stedman is being sentenced. This total sentence exceeds both the Guidelines range and the statutory maximum sentence for any of the individual counts of conviction. In order to impose the requested sentence, the Court will need to depart or vary upward from the Guidelines range and will have to impose consecutive sentences on at least some of the counts of conviction. As explained below, this Court should do both of those things to impose a fair and just sentence that reflects all of the § 3553(a) sentencing factors.

### a. An Upward Departure or Variance is Warranted

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c); U.S.S.G. § 1B1.1, cmt., background ("If, after step (c), the court imposes a sentence that is outside the guidelines framework, such a sentence is considered a 'variance.'"). Because Stedman's Guidelines range does not capture the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our democracy and the rule of law, the Government respectfully requests that the Court depart or vary upwards from the top of the Guidelines range to 30 months' incarceration.

11

Stedman was an avid and willing participant in an unprecedented crime. In fact, he was a leader, bringing others together to the Capitol on January 6 and leading two of them into and throughout the building. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses. His offenses targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, Stedman "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87.

However, nothing in Stedman's current Guidelines calculation reflects these facts. Stedman would face the same offense level if his crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[2] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And

---

[2] The D.C. Circuit's holding in *Brock*, 94 F.4th 39, finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's decision in *Fischer v. United States*, 144 S. Ct. 2176, 2195 (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85. A sentence within Stedman's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Guidelines expressly state that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[3] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducting the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read, and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as

---

[3] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

just another crime. "January 6th wasn't an ordinary violent riot but one that interfered with the counting of electoral votes and the peaceful transition of power, which is one of the bedrocks of our democracy." *United States v. Perkins*, 21-CR-147-CJN, Sent. Tr. at 53; *see also United States v. Fitzsimons*, 21-CR-158-RC, Sent. Tr., at 85-86. ("The security breach forced lawmakers to hide inside the House gallery until they could be evacuated to undisclosed locations. In short, the rioters' actions threatened the peaceful transfer of power, a direct attack on our nation's democracy.").

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

And several judges of this Court have upwardly departed in January 6 cases precisely because in a post-*Fischer* world, the advisory guideline range did not adequately take into account all of the relevant circumstances. See *United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

14

In *United States v. Sparks*, 21-CR-87-TJK, Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory guideline range of 15-21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sentencing Tr., at 87-88. Judge Kelly found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id.* at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. Judge Kelly found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, Judge Kelly found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson*

Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id.* at 61. The court also found an upward departure appropriate under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id.* After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

Likewise, in *United States v. Dunfee*, 23-CR-36-RBW, Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(a)(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See United States v. Dunfee*, 23-CR-36-RBW, ECF No. 90, at 2. From an advisory range of 18-24 months, the court sentenced Dunfee to 30 months of imprisonment.

Most recently, in *United States v. Oliveras*, 21-CR-738-BAH, this Court sentenced a defendant on a § 231(a)(3) conviction, a § 111(a)(1) conviction, and four misdemeanors, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. This Court found an upward departure was warranted under U.S.S.G. § 5K2.7 (Disruption of Governmental Function) because

> after Fischer, with the dismissal of [the defendant's] 1512(c)(2) conviction, none of the conduct that goes into determining defendant's sentencing guidelines reflect his intent to engage in political violence that poses such a threat to our American democracy…  His intent to obstruct Congress in the Electoral College certification by violence, if necessary, go above and beyond what any of his current convictions now take into account.

*Oliveras,* 21-cr-738 (BAH), Sent. Tr. at p. 49. The court noted that "[i]n assessing the extent of the departure, review of how the guidelines for obstruction of an official proceeding at [U.S.S.G. §] 2J1.2 would have applied to defendant [pre-Brock] provide a general guide… [and] an upward departure within that range is appropriate." *Id*. at 49-50. The court also noted that it "would impose the same sentence with . . . an upward variance for the same reasons that are outlined in § 5K2.7 and consideration of the 3553(a) factors." *Id.* at 97. From an advisory Guidelines range of 37-46 months' imprisonment, this Court sentenced Oliveras to 60 months of imprisonment.

Because the seriousness of defendant's crime is not adequately captured by the applicable Guideline, an upward departure is appropriate here as well. However, if the Court declines to depart, an upward variance to 30 months' incarceration is still warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up). While the Supreme Court's decision in *Fischer* has changed Stedman's advisory Guideline range, it does not require this Court to take a drastically different view of his conduct. *Hostetter*, 21-CR-392-RCL, ECF 507, at 4-5. (cleaned up).  Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708-RCL, ECF 151, Sent. Tr. at 5 ("Nothing about *Fischer*

or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).

In addition to departing upwards, other courts have varied upward from the advisory guideline range specifically because of the unique and serious nature of the crimes committed that day; this Court should do no less. *See Reffitt*, 2024 WL 1577941, at *5 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-368-TJK, Sent'g Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157-TNM, Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *Hale-Cusanelli*, 21-CR-37-TNM, Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and

injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline] calculation allows.").

In this case, the government submits that an upward variance and/or departure of 14 months from the high end of the Guidelines range is warranted to reach an appropriate sentence.

The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the Government requests that the Court make specific findings that Stedman's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting United States v. *Brown*, 808 F.3d 865, 867, 872 (D.C. Cir. 2015)).

In this case, the government submits that an upward variance and/or departure is warranted to reach an appropriate sentence. The government respectfully requests that the Court sentence Stedman to a total term of incarceration of 30 months' incarceration. As discussed below, to achieve this sentence, the court would need to impose consecutive sentences on some of the counts.

**b. Consecutive Sentences Are Warranted to Impose an Appropriate Sentence.**

Pursuant to U.S.S.G. § 5G1.2(d), where the total sentence to be imposed exceeds the statutory maximum of any one count, the sentence for each court should be ordered to be served consecutively to the extent needed to produce a combined sentence equal to the total punishment.

A federal court "can typically choose whether to run" a defendant's "sentences concurrently or consecutively." *Lora v. United States*, 599 U.S. 453, 455 (2023); *see also Setser v. United States*, 566 U.S. 231, 236 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose...."). While the Sentencing Guidelines default position is that sentences of imprisonment run concurrently, "if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts *shall* run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d) (emphasis added); *see also United States v. Lafayette,* 337 F.3d 1043, 1050 & n.11 (D.C. Cir. 2003) (explaining that a court may impose consecutive or "stack[ed]" sentences to achieve a total sentence in excess of the statutory maximum on a single count).

Moreover, "although the Guidelines should be the starting point and the initial benchmark, district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a)." *Pepper v. United States*, 562 U.S. 476, 490 (2011). Specifically, 18 U.S.C. § 3584(a) provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time ... the terms may run concurrently or consecutively," while § 3584(b) states that "[t]he court, in determining whether the terms imposed are to be ordered to

20

run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in [18 U.S.C.] section 3553(a)." District Courts thus have discretion to deviate "from the guidelines' recommendation that a defendant's sentences run concurrently and to impose, instead, consecutive sentences after considering the § 3553(a) factors. *United States v. Lymon*, 905 F.3d 1149, 1153 (10th Cir. 2018).

Here, the § 3553(a) factors counsel that Stedman be sentenced to a term of incarceration above the statutory maximum sentence for any individual count and that his sentence of incarceration for counts should run consecutively to result in a total period of incarceration of 30 months. As described above, January 6 was an unprecedented crime which is not accounted for in Stedman's Guidelines calculation. Further, contrary to this Court's admonishment at sentencing, Stedman continues to use his public pulpit "to disseminate more disinformation and divisiveness in this country." Far from expressing any remorse for his criminal conduct on January 6, Stedman's post-conviction words demonstrate a manifest refusal to do so.

The government is aware of at least two January 6 cases where a court ordered consecutive service of the sentences for multiple counts. *See United States v. Nordean, et. al*, 21-cr-175 (TJK), Sep. 5, 2023 Minute Entry; *United States v. Neely*, 21-cr-0642 (JDB) Sep. 5, 2023 Sent. Hrg. Tr. at 42. And at least one judge in this District has stated consecutive sentences may be appropriate where a January 6 defendant's § 1512(c)(2) conviction was vacated in light of Fischer, leaving only misdemeanor convictions. *See United States v. Kelly*, 21-cr-708 (RCL), ECF No. 147 at 10 ("The Court is much likelier to impose a sentence of at least 12 months, and perhaps greater if the Court decides to impose any sentences consecutively. The Court is likely to impose such a sentence even if it requires an upward variance from the guidelines.").

21

### c.  Analysis of the 18 U.S.C. § 3553(a) Factors

After calculating the Guidelines, the Court should next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49, 50. This two-prong "sentencing framework applies both at a defendant's initial sentencing and at any subsequent resentencing after a sentence has been set aside on appeal." *Pepper v. United States*, 562 U.S. 476, 490 (2011) (citing 18 U.S.C. § 3742(g) ("A district court to which a case is remanded ... shall resentence a defendant in accordance with section 3553") and *Dillon v. United States*, 560 U.S. 817, 828, 827 (2010)).

Although "the Supreme Court's decision in *Fischer* may ultimately change the Guidelines recommendation for [a defendant], Fischer does not dictate the Court's application of the 18 U.S.C. § 3553(a) factors to [that defendant's] remaining convictions[, and t]he Court may still consider [the defendant's] serious conduct on January 6th, 2021 in its entirety, even if the court of appeals concludes that this conduct no longer constitutes a crime under 18 U.S.C. § 1512." *Hostetter*, 1:21-CR-392-1-RCL, ECF 507 (July 18, 2024, Order Denying Motion for Release from Custody Pending Appeal) at 4.

Section 3553(a) provides that the Court consider the following: (A) "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); (B) "the history and characteristics of the defendant," *id*.; (C) the promotion of "respect for the law," 18 U.S.C. § 3553(a)(2)(A); (D) general and specific "deterrence," 18 U.S.C. § 3553(a)(2)(B)(C); (E) the Guidelines and Guideline range, § 3553(a)(4); and (F) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Guidelines is just one of many factors under § 3553(a).

As discussed above and below, the Guidelines range in the instant case is not an accurate reflection of the harm or gravity unique to Stedman's attempts to obstruct the certification of the

2020 presidential election, an attempt to undermine American democracy itself. Furthermore, as discussed above and below, Stedman had a significant online presence and did and continues to use this presence to amplify disinformation and to make post-conviction public statements which exhibit a lack of remorse and no acceptance of responsibility for his crimes or acknowledgement of the severity and harm of his and the others' actions.

### i. Nature and Circumstances of the Offense Support a 30-month sentence.

As discussed above, Stedman's conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Stedman was not only a participant, but a local and influential organizer, publicizing the false narrative of a stolen election and mobilizing others to attend the protest. He then led two of his followers into the Capitol Building where he exhorted others to break down the door to the House Chamber and later threatened a law enforcement officer guarding those very doors. He recorded his actions and those of other rioters through video and photographs and even recorded a video for his followers as he left, showing no remorse, only pride, in what he had done.

### ii. Stedman's History and Characteristics

Stedman, who lives in Haddonfield, New Jersey, is a dating and relationship coach for men and a social media influencer. He has no prior criminal history.

### iii. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law.

As with the nature and circumstances of the offense, this factor supports a significant sentence of incarceration. Stedman's criminal conduct on January 6 was the epitome of disrespect for the law and an attack on democracy, as detailed in the departure and variance sections.

### iv. The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[4] The demands of general deterrence weigh strongly in favor of additional incarceration, given the nature of Stedman's offense.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to Stedman also weighs heavily in favor of additional incarceration. Not only did Stedman participate in the January 6, 2021, insurrection and subsequently cover-up his criminal conduct by lying under oath at trial, he doubled down post-conviction in his public essays, demonstrating that he has not only a lack of remorse for his conduct but is also still actively exhorting others to action ("[w]hen that moment of truth arrives, don't let us down …"), suggesting that he may engage in such behavior again unless sufficiently deterred ("They couldn't just let us win. As always, we'd have to fight for it.").

---

[4] *See* 18 U.S.C. § 23]31(5) (defining "domestic terrorism").

### v. The Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants [1] with similar records [2] who have been found guilty of similar *conduct*." (emphasis added).  Although different charges are a legitimate consideration when determining if there are warranted disparities between two sentences, the focus of the judicial inquiry should be on the real underlying conduct. *See United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020) ("A difference in types of charges is a legitimate consideration when determining whether there should be a justifiable difference, or disparity, between the sentences of two defendants"); *United States v. Booker*, 543 U.S. 220, 223, 125 S. Ct. 738, 743, 160 L. Ed. 2d 621 (2005) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct underlying the crime of conviction."). Courts have recognized that "[n]o limitation shall be placed on the information concerning the background, character, and *conduct* of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *United States v. Rhodes*, 145 F.3d 1375, 1381 (D.C. Cir. 1998) (citing 18 U.S.C. § 3661) (emphasis added).  District Courts thus "may still consider [the defendant's] serious conduct on January 6th, 2021, in its entirety, even if the court of appeals concludes that this conduct no longer constitutes a crime under 18 U.S.C. § 1512." *Hostetter*, 1:21-CR-392-1-RCL, ECF 507 at 4.

Additionally, pre-*Fischer* 1512(c)(2) cases remain reliable comparators because a review of sentences given by district judges in pre-*Fischer* Capitol Siege cases involving 1512(c)(2) convictions confirms that district judges were already appropriately considering and weighing the 18 U.S.C. § 3553(a) factors in their decision-making, instead of mechanically imposing sentences

with the Guidelines range. Indeed, this Court previously varied down from the Guidelines range in this case.

In a majority of pre-*Fischer* Capitol Siege cases involving 1512(c)(2) convictions, judges sentenced outside of the then-applicable Guidelines range and gave variances based on the § 3553(a) factors. At least 19 of the district judges who have sentenced Capitol Siege cases have varied in at least one of their cases involving a 1512(c)(2) conviction. And when varying, judges considered the importance of the context and the attempts to obstruct the certification. *See, e.g., United States v. Lucas Denney*, 22-cr-70 (RDM), Sent. Tr. at 83 ("I will say that under other circumstances, I might have varied further downward. But I had to temper any basis for varying further downward by the fact that the attacks occurred in the context of an assault on our democracy, an assault on the Capitol, an assault on one of the most sacred events in our nation, and that resulted in injuries, not just to the psychic well-being of the officers who were -- endured that assault, but to the nation as a whole."); *United States v. Hunter Seefried*, 21-cr-287 (TNM), Sent. Tr. at 54 ("I have no doubt that the Commission would have intended for this to be applied to a substantial interference with an official proceeding, which is itself more significant than almost any proceeding. And you and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources. Therefore, I intend to vary upwards from the guideline range I've calculated to reflect the substantial interference you and others caused."); *United States v. Gilbert Fonticoba*, 21-cr-638 (TJK), Sent. Tr. at 66-67 ("I'm varying downward given the posture we're in. But I would vary upward significantly to get to 48 months if I only had Count 2, because I think there, again, given the evidence here of the intent the defendant's conceded, the intent to obstruct the proceeding and the nature of the proceeding itself is so important and so critical in

terms of deterrence and all the rest and in terms of the specific fact pattern here that that would be my sentence.").

## VI.    Conclusion

For the reasons set forth above, and as fully supported by the facts and the law, the United States asks the Court to resentence Stedman to a sentence of 30 months' incarceration –with the sentence for each count to be ordered to be served consecutively to the extent needed to produce a combined sentence equal to the total punishment. U.S.S.G. § 5G1.2(d). The United States further asks the Court to impose a 1-year term of supervised release, restitution of $2,000, and the mandatory special assessment of $25 each on Counts Two and Three and $10 each on Counts Four and Five.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:    /s/Joseph S. Smith, Jr.
       Joseph S. Smith, Jr.
       Assistant United States Attorney
       601 D Street, N.W.,
       Washington, D.C. 20530
       (619) 546-8299
       Joseph.s.smith@usdoj.gov